Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHELÉNE PETERSON and ERIKA SCHAFFNER, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>LANE BRYANT BRANDS OPCO LLC,<br><br>*Defendant*. | Case No. 3:25-cv-10947-LB<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

# Table of Contents

I. Introduction....1
II. Parties....5
III. Jurisdiction and Venue....5
IV. Facts....6
A. Defendant's fake sales and discounts....6
B. Defendant's advertisements are unfair, deceptive, and unlawful....47
C. Defendant's advertisements harm consumers....48
D. Plaintiffs were misled by Defendant's misrepresentations....50
E. Defendant breached its contract with and warranties to Plaintiffs and the putative class....55
F. No adequate remedy at law....56
V. Class Action Allegations....57
VI. Claims....59
First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq....59
Second Cause of Action: Violation of California's Consumer Legal Remedies Act....61
Third Cause of Action: Violation of California's Unfair Competition Law....63
Fourth Cause of Action: Breach of Contract....66
Fifth Cause of Action: Breach of Express Warranty....67
Sixth Cause of Action: Quasi-Contract/Unjust Enrichment....68
Seventh Cause of Action: Negligent Misrepresentation....69
Eighth Cause of Action: Intentional Misrepresentation....70
VII. Relief....71

## I. Introduction.

1. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California's False Advertising Law provides, "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely

suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

7. As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8. Defendant Lane Bryant Brands Opco LLC ("Lane Bryant" or "Defendant") makes, markets, and sells plus-size clothing, shoes, and accessories ("Lane Bryant Products" or "Products"). The Products are sold online through Defendant's Website, www.lanebryant.com (the "Lane Bryant Website" or the "Website"), as well as in-person in Defendant's brick-and-mortar stores.

9. Defendant advertises purported regular prices and purported limited-time sales offering steep discounts from those listed regular prices. Here are some examples:




Captured February 24, 2023




Captured October 24, 2023




Captured August 15, 2024




Captured November 7, 2024




Captured April 20, 2025




Captured December 10, 2025

10. Defendant advertises that these supposed discounts are limited in time, for example "Today Only" or "Last Call."

11. Far from being time-limited, however, the discounts on Defendant's Products are routinely available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are regularly available for less than that. The purported discounts Defendant advertises are not the true discounts the customer is receiving, and are often not discounts at all. Nor are the purported discounts limited time—quite the opposite, they are consistently available.

12. As described in greater detail below, after reviewing Defendant's Website, www.lanebryant.com, and seeing and relying on advertised sales, Plaintiffs bought Products from Defendant. When Plaintiffs made their purchases, Defendant advertised that a purported sale was going on, and Plaintiffs believed that they were being offered steep discounts from the purported regular prices that Defendant advertised. And based on Defendant's representations, Plaintiffs believed that they were purchasing Products whose regular prices and market values were the purported list prices that Defendant advertised, that they were receiving substantial and specific

discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs caused Plaintiffs to buy from Defendant when they did.

13. The representations that Plaintiffs relied on, however, were not true. The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells the Products. The purported discounts were not true discounts, and sales were consistently available—not time-limited. Had Defendant been truthful, Plaintiffs and other consumers like them would not have purchased the Products, or would have paid less for them.

14. Plaintiffs bring this case for themselves and other California customers who purchased Lane Bryant Products from Defendant.

## II. Parties.

15. Plaintiff Sheléne Peterson is domiciled in England. Prior to mid-December, 2025, when she moved to England, Ms. Peterson was domiciled in Belmont, California.

16. Plaintiff Erika Schaffner is domiciled in Escondido, California.

17. The proposed class includes citizens of California.

18. Defendant Lane Bryant Brands Opco LLC is an Ohio company with its principal place of business at 933 MacArthur Boulevard, Mahwah, NJ, 07430. Defendant's previous principal place of business was 8323 Walton Parkway, New Albany, Ohio, 43054, but Defendant moved in 2024.

## III. Jurisdiction and Venue.

19. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

20. The Court has personal jurisdiction over Defendant because Defendant sold Lane Bryant Products to consumers in California, including to Plaintiffs.

21. Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Lane Bryant Products to consumers in California and this District, including to Plaintiff Sheléne Peterson. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff Sheléne Peterson.

## IV. Facts.

### A. Defendant's fake sales and discounts.

22. Defendant makes, markets, and sells exclusive plus-size clothing, shoes, and accessories products.[1] Defendant sells its Products directly to consumers online, through the Lane Bryant Website, lanebryant.com, and its brick-and-mortar stores.

23. Through its advertisements, including on the Lane Bryant Website and in Lane Bryant Stores, Defendant creates the false impression that its Products' regular prices are higher than they truly are.

The Lane Bryant Website

24. The Lane Bryant Website routinely advertises substantial sales on all Lane Bryant Products, or else on large portions of the Products, including by offering numerous different promotions that apply to different Product categories, resulting in nearly all Products being on sale at any given time. The combined effect of these constant sales is that Defendant's Products do not actually regularly sell for the purported regular prices that Defendant advertises, and instead regularly sell for significantly discounted prices.

---

[1] Defendant largely sells exclusive Lane Bryant Products, but it does sell some non-exclusive Products produced and sold by third-parties (for example, Sketchers products). The proposed putative class includes only consumers who purchased exclusive Lane Bryant Products.

25. Defendant advertises numerous and substantial promotions prominently across its Website. For example, Defendant advertises the sales on its homepage, on banners visible across the Website, on a "Today's Offers" pop-up visible across the Website, on search and Product category pages, on individual Product listings, and during check-out. The promotions are advertised in a variety of ways, including by showing that Products are on sale for "X% Off," and by placing lower discounted prices (*e.g.*, $52.46) next to purported regular prices shown in strikethrough font (*e.g.*, ~~$74.95~~). Examples are included below:




Captured June 1, 2023




Captured April 20, 2025




Captured May 23, 2024




Captured July 13, 2024




Captured December 15, 2025




Captured December 12, 2025

26. Defendant regularly advertises promotions that offer substantial discounts—of 20%, 30%, 40%, or even 50%—on all Lane Bryant Products:




Captured April 5, 2023




Captured June 1, 2023




Captured February 22, 2024




Captured April 20, 2025




Captured May 1, 2025

27. On days where Defendant does not expressly offer sitewide discounts on its Website, it still offers sales on large quantities—or even all—of its Products. For example, Defendant routinely advertises promotions that apply to and offer substantial discounts on "almost everything" on the Lane Bryant Website:




Captured February 24, 2023




Captured October 24, 2023




Captured May 23, 2024




Captured August 15, 2024




Captured November 26, 2024




Captured December 10, 2025

28. Defendant also regularly offers sales that, while not advertised as providing sitewide sales or discounts on "almost everything," do actually apply to a large portion, or even all, of Defendant's Products by offering sales on certain Product categories, including, routinely, sales that offer percent-off discounts on all, or the vast

majority, of "clothing" Products. For example, Defendant advertises sales offering discounts on "full-price clothing" or "clothing, sleep, swim, and accessories," or else offers sales on specific Products, and then offers different sales on "all other" Products in certain wide categories:




Captured January 30, 2023




Captured September 18, 2023




Captured February 5, 2024




Captured March 8, 2024




Captured June 8, 2024




Captured August 24, 2024




Captured October 6, 2024




Captured November 19, 2024




Captured February 14, 2025




Captured March 12, 2025




Captured March 26, 2025




Captured August 12, 2025

29. As shown above, Defendant regularly advertises sales on "all" Products within a given category or categories (*e.g.*, all "Clothing" or "Accessories"). Other

times, Defendant offers discounts off Products in a given category or categories without using the word "all" (*e.g.*, "Clothing & Accessories 30% Off"). Even when Defendant's advertising does not say "all," however, the sales do apply to all, or at least the overwhelming majority, of the Products in a given category. For example, on December 12, 2025, Defendant advertised a sale offering "50% Off" of its "Clothing" Products (in addition to other wide-reaching sales):




30. Defendant's Website claimed that this sale was valid on "as marked in-stock" Products, and had certain restrictions, including that "early access, panties, clearance, and third-party brands" were excluded:



**CLOTHING, ACCESSORIES & SLEEP 50% OFF:**

Valid in Lane Bryant stores and at lanebryant.com 12/12/2025 – 12/14/2025 (until 11:59 p.m. PT online). Offer valid on as marked in-stock clothing, accessories, sleep & swim. Excludes early access, panties, clearance and third-party brands (e.g., Skechers & Lemon). Not combinable with coupons or other discounts unless otherwise stated.

31. In reality, however, on the day of the sale, *every one* of Defendant's 963 listed "Clothing" Products was offered at a purported sale price. The only Products that were not listed as qualifying for the 50% Off sale were Products that qualified for different sales that Defendant was offering. For example, the "No-Gap Curvy Fit Straight Leg Jean" shown below was for sale pursuant to a separate (and even better) "Jeans Doorbuster" sale:




32. Finally, Defendant routinely offers still more sales on specific Products or Product types, as well as additional promotions. These promotions further impact the true regular prices of Defendant's prices. Below are some examples:




Captured February 1, 2023




Captured May 16, 2023




Captured August 11, 2023




Captured October 24, 2023




Captured September 1, 2024




Captured December 30, 2024




Captured January 14, 2025







Captured April 25, 2025

33. As discussed above, Defendant's advertised sales are not limited scope sales that apply only to a select few Products on any given day. Even when Defendant offers limited sales that apply to only some Products, they supplement those sales with other advertised promotions such that ultimately, a large proportion—or all—of its Products are on sale from the purported regular prices pursuant to some advertised discount at any given point. For example, on June 13, 2023, Defendant advertised at least (it is possible not all sales were visible in the archived screenshots Plaintiffs' counsel had access to) the following sales on its homepage and "Today's Offers" pop-up, meaning that a huge portion, and likely the vast majority, of Defendant's Products were on sale pursuant to one or more of the advertised promotions:




34. As a second example, on November 7, 2024, Defendant advertised at least the following sales on its homepage and "Today's Offers" pop-up, meaning that,

again, a huge portion, and likely the vast majority, of Defendant's Products were on sale pursuant to one or more of the advertised promotions:



35. As a third example, on February 26, 2025, Defendant advertised at least the following sales on its homepage and "Today's Offers" pop-up, meaning that, again, a huge portion, and likely the vast majority, of Defendant's Products were on sale pursuant to one or more of the advertised promotions:















36. As a final example using a specific product category sale, on April 23, 2026, Defendant advertised a "doorbuster" sale offering sandals for $29.50 (among a number of other promotions). The sale was purportedly only available on "select in-stock sandals":

> **DOORBUSTER SANDALS $29.50:**
> Valid only on select in-stock sandals while supplies last. Not available in closing stores. Valid in stores and at lanebryant.com. Excludes early access, third party & clearance. Associates of Lane Bryant and other Knitwell-owned companies not eligible.

37. On the day of the sale, however, *every one* of Defendant's sandal Products was offered at a purported sale price. The only sandal Products that were not listed as qualifying for the $29.50 sale were Products that qualified for different sales offered by Defendant.

38. The combined effect of Defendant's wide-reaching and numerous sales is that Defendant's Products are consistently available at a discount, the vast majority of the time. Said differently, the Products are available for a discount via some sale on Defendant's website so frequently that the advertised list prices are not the prices at which the Products are usually sold, as consumers reasonably believe. Instead, because of the constant discounts, their usual, regular, prevailing prices are far lower. Put differently, the list prices that Defendant advertises for its Products are not actually Defendant's regular prices, and the purported discounts Defendant advertises are not the true discount the customer is receiving. Defendant's regular prices are much lower than advertised; and so too are the discounts.

39. Defendant routinely advertises its promotions with language claiming that the sales are limited-time or will end on a particular date. For example: "This Weekend Only," "Ends Today!," "Today Only!," "Today & Tomorrow!," "Limited Time Only!," and "Last Call." As a result, and because they naturally believe that sales are special time-limited events, reasonable consumers believe that Defendant's advertised sales are only available for a limited time and that, once the purportedly limited-time sale has ended, they will have to pay a Product's purported regular price and will not be able to get the Product for a discounted price. In reality, however, when the sales end they are quickly and continuously replaced by new sales offering comparable discounts on Defendant's Products.

**<u>Lane Bryant Stores</u>**

40. In addition to advertising its promotions online, Defendant routinely offers the same or materially similar promotions on Products purchased through its brick-and-mortar stores.

41. As shown above, the advertised promotions on the Website routinely specify that Defendant's promotions are available both in stores and online. For example:




Captured June 1, 2023




Captured February 5, 2024




Captured February 22, 2024




Captured March 8, 2024




Captured February 14, 2025

42. Plus, even when Defendant's Website advertisements do not expressly state that a given sale applies in stores as well as online, the sales are often still available in stores. For example, on January 8, 2024, Defendant advertised that its "New Arrivals" were "30% Off." On the Website's homepage, it did not specify whether the sale applied in stores as well:



43. The promotional terms of the sale, however, specified that the promotion was available online as well as "in Lane Bryant stores":

> **NEW ARRIVALS 30% OFF:**
>
> Valid only on select full price apparel, accessories and sleep while supplies last. Excludes early access, clearance, doorbusters and other third-party brands. Discount applied before tax and shipping. Not combinable with coupons or other discounts unless otherwise stated. Not redeemable for cash or, except as stated in our Return Policy, adjustments to prior purchases. Valid in Lane Bryant Stores and at lanebryant.com on 1/4-1/9/2024 (until 11:59 p.m. PT online).

44. To confirm that the sales are advertised and apply in stores as well as online, Plaintiffs' counsel visited a Lane Bryant store on April 23, 2026. On that day, both the Website and the Lane Bryant Store advertised a "Friends & Family" promotional event. In connection with this event, the Website advertised a number of sales, including:

> Bottoms 40% Off
> SHOP NOW Details

> Tops 40% Off
> SHOP NOW Details

> LIVI 40% Off
> SHOP NOW Details

> **CLOTHING, SLEEP & SWIM 40% OFF:**
> Valid in Lane Bryant stores and at lanebryant.com 4/20/2026 – 4/25/2026. Offer valid on as marked in-stock clothing, sleep & swim. Excludes early access, panties, clearance and third-party brands (e.g., Skechers, Clarks & Lemon). Not combinable with coupons or other discounts unless otherwise stated.

> SLEEP & LOUNGE 40% OFF*

> CLEARANCE EXTRA 50% OFF













45. And, on that day, those same sales were advertised prominently in the Lane Bryant brick-and-mortar store. For example:










Swim
40% OFF


EXTRA
50% OFF
CLEARANCE


GET IN HERE!
Friends & Family Event
First time ever!
PANTIES
6 for $26 50
Mix & match your faves


DOORBUSTER
Seriously Sexy™ & Stretch Lace Panties
4 for $26 50
Sexy, Your Way
From soft to silky to smoldering.
Feeling sexy just got way easier.


LIMITED TIME ONLY!
DOORBUSTER
Dresses
$39 50


SANDALS
$29 50
DOORBUSTER

46. As shown above, Defendant's in-store advertisements are substantially similar to those shown online. In particular, for the example above, the online advertisements represented that consumers could get 40% off of many Products, and the in-store representations made the same %-off promises. In both cases, reasonable consumers would reasonably understand the advertising to mean that, if they purchase during the sale, they will receive a 40% discount off of the Products' regular prices. In addition, both the online and in-store advertisements advertised other sales in the same way too, including by advertising that panties were "6 for $26.50," that "sexy" panties were "4 for $26.50," that "sandals" were available for $29.50, and that "dresses" were available for $39.50.

* * *

47. To better understand Defendant's discounts, Plaintiffs' counsel conducted an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org).[2] As part of this investigation, using the Wayback Machine and additional real-time screenshots of Defendant's website, Plaintiffs' counsel randomly collected, where available, one screenshot a month of the homepage of lanebryant.com from January 2023 to September 2025, for a total of 31 screenshots.[3] In every single screenshot collected, Defendant offered numerous and substantial sales on a huge portion, and likely the vast majority of or all, Products. Below is a chart displaying the visible advertised sales (on the homepage and "Today's Deals" pop-up) on each day a screenshot was collected:

[2] The Internet Archive, available at www.archive.org, is a library that archives web pages.

[3] The Wayback Machine does not have a functioning screenshot of the Lane Bryant homepage for June or July of 2025. So, for these months, counsel does not have screenshots.

| Date | Visible Advertised Sales[4] |
|---|---|
| January 30, 2023 | 25% Off Full-Price Styles; 40% Off Dresses, Shoes, & Accessories; 50% Off Clearance Plus! Clearance Tops $15 & Up |
| February 1, 2023 | 25% Off Full-Price Styles (Including Sleep & Lounge 25% Off); $40 Off $100 or $100 Off $200+ Purchases; 50% Off Clearance Plus! Sale Steals $15 & Up; Bras Buy One Get One 50% Off |
| March 1, 2023 | Full-Price Styles $25% Off; $40 Off $100, $100 Off $225+; Clearance up to 80% Off Original Prices Plus Clearance Bras $25!; Cotton, No-Show & Extra Soft Panties 5 for $35 |
| April 5, 2023 | 40% Off 3+ Items, 30% Off 2+ Items, 20% Off 1 Item (Including Bras, Sleep & Lounge); All Panties 3 Free When You |

[4] The promotions shown in this chart reflect the sales advertised on Defendant's homepage, but Defendant routinely has additional sales that are not advertised on the homepage. For example, on January 8, 2024, Defendant advertised the sales shown in the chart on the Website homepage. Defendant also advertised a number of additional sales elsewhere on the Website that were not visible on the homepage, including "Doorbuster Comfy Cotton PJ Sets $25," "Doorbuster Sleepshirts $15," "Doorbuster Satin & Plaid Shirts $25," "Cotton Bras Buy One Get One $15," "Cotton, Comfort Bliss, No-Show & Extra Soft Panties 5 for $35," "Sexy & Lace Panties 3 for $36," and "Shaping Panties 2 for $30." Plus, in addition, Defendant also routinely offers additional deals and discounts available only to Lane Bryant Rewards Members, or else to Lane Bryant credit card holders.

| | |
|---|---|
| | Buy 3; Clearance Now 50% or More Off Original Price |
| May 16, 2023 | So Many Styles 40% Off (Including Clothing & Accessories 40% Off); Tees, Crops, Shorts, & Swim Buy One Get One $10; Clearance Take An Additional 40% Off |
| June 1, 2023 | 40% Off Your Purchase (Including Clothing 40% Off; Panties 40% Off; Bras 40% Off); All Dresses Up to 50% Off; All Accessories 50% Off; Clearance Take An Additional 40% Off |
| July 11, 2023 | Semi-Annual Sale Now Up to 60% Off; 60% Off Clearance; All Bras Buy One Get One Free; Free Shipping on $49+; Tops $14.99 & Up; Select Dresses $49.99; Crops & Shorts $24.99 & Up; LIVI Tops & Bottoms $29.99 Each;[5] Swim $24.99 & Up |
| August 11, 2023 | Clothing, Shoes, & Accessories 30% Off; Tops 40% Off (Including Best-Selling Tops 40% Off); Perfect-Fit Pants & Jeans $49 & Up; Curve-Loving Cotton Bras, Buy One Get One $15; Panties 6 for $30; Clearance $9.99 & Up; Pants & Jeans $49 & Up |

[5] "LIVI" is Lane Bryant's activewear line.

| | |
|---|---|
| September 27, 2023 | Buy One Get One 50% Off All Full-Price Bras & Clothing (Including LIVI, and Sleep & Lounge); Bra & Panty Sets $39; Clearance Take an Extra 40% Off |
| October 24, 2023 | 40% Off Almost Everything (Bras, Too!) (Including New Arrivals 40% Off; Bras 40% Off; Sleep & Lounge 40% Off; LIVI 40% Off); All Sweaters $39; $45 Booties, Too!; Clearance Take an Extra 50% Off |
| November 3, 2023 | Buy One Get One 75% Off Full-Price Clothing, Shoes, Accessories & Bras (Including LIVI, and Sleep & Lounge); Panties 10 for $39; Clearance Now Take an Extra 60% Off |
| December 17, 2023 | Clothing & Accessories 50% Off; Sweaters, Coats, & Boots 60% Off; All Bras Starting at $25; Comfy Cotton Sleep $15 & Up (Comfy Cotton PJ Sets $25); Clearance Panties 4 for $18.50; All Dresses 60% Off; Clearance Take an Extra 50% Off; Comfy Sleepshirts $15 |
| January 8, 2024 | Now 50% Off All LIVI (Including Sports Bras!); Clearance Extra 60% Off 2+ Styles or 50% Off 1 Style; 50% Off So Much More; 30% Off New Arrivals; |

| | |
|---|---|
| | Clearance Panties 4 for $18.50; Lane Love Sale 50% Off; Clearance Bras $25 |
| February 2, 2024 | All Cacique Bras $29 & Up; 40% Off All Tops & Dresses, All Other Full-Price Clothing 30% Off; Clothing & Accessories 30% Off; Extra 60% Off Clearance |
| March 8, 2024 | 10 For $39 Panties; All Denim, Crops, Tops & More! 40% Off (Including New Arrivals 40% Off; Swim 40% Off; LIVI 40% Off; Sleep & Lounge 40% Off); New! Invisible Edge Panties $10; Free Shipping on $75+ |
| April 17, 2024 | Up to 50% Off Full-Price Styles (Even Bras!) (Including Tops 50% Off; Bottoms 40% Off; LIVI 50% Off; Bras 30% Off); All Swim $39 & Up; Extra 50% Off Clearance |
| May 23, 2024 | Almost Everything 50% Off (Including Clothing & Accessories 50% Off; Swim 50% Off; Crops & Shorts 50% Off; Tops 50% Off); Extra 50% Off Clearance, Styles Starting at $14.99!; Select Tees & Tops $15 & Up |
| June 8, 2024 | 40% Off All Clothing, Sleep, Swim, & Accessories; All Dresses $39 & Up; All |

| | |
|---|---|
| | Bras $35; Extra 50% Off Clearance, Styles Starting at $14.99! |
| July 2, 2024 | 40% Off Almost Everything Including New Arrivals! (Including Sleep 40% Off); Tees & Tanks $15, Graphic Tees $20; Crops & Shorts $30; Dresses $29 & Up; Clearance Bras $19.99 & Up, All Other Bras $35; Clearance Panties 3 For $13.50; Swim 50% Off; Seriously Sexy 40% Off; Cotton, Comfort Bliss & No-Show Panties 5 for $35; Extra 50% Off Clearance |
| August 24, 2024 | 30% Off Clothing & Accessories + 40% Off LIVI; Modern Luxe (Bra) $30, Reg. Price $58.95-$62.95, All Other Bras $35; $10 Off $50, $25 Off $125, $40 Off $200+; All Clearance Pants & Jeans $19.99 + Sale Steals From $19.97; Panties 5 for $35!; Extra 50% Off Clearance |
| September 1, 2024 | 40% Off Almost Everything Including Bras (Including New Arrivals 40% Off; Bras 40% Off); 100s of New Arrivals On Sale; 10 for $39 Panties, Valued up to $145!; LIVI All Tops & Bottoms $29 Each; Extra 70% Off Clearance; Free Shipping on $49+ |

| | |
|---|---|
| October 6, 2024 | 40% Off The Cozy Shop; 30% Off All Other Clothing & Accessories; Comfort Bliss Bras $30, All Other Bras $35 + $5 Panties to Match; Clearance 50% Off Already-reduced prices!; Free Shipping on $49+; Jeans, Sweaters, Boots & Outerwear 40% Off; Style Steals! Prices Starting at $20 |
| November 26, 2024 | 50% Off Almost Everything Now Includes All Bras (Including All Bras 50% Off; All PJ Sets 50% Off; New Arrivals 50% Off; Select Styles 50% Off; All LIVI 50% Off); Sweaters $29, Valued up to $79.95; Tops & Tees $12 & Up, Valued up to $49.95; 50% Off Clearance; Panties 5 for $35; Boots $45 |
| December 30, 2024 | Wear Now Faves! Clothing & Accessories 50% Off; $12 & Up Tees; $30 & Up Shoes & Boots; $65 & Up Coats; 500+ Styles on Sale! + 50% Off Wear-Now Faves; 50% Off Clearance; All Bras on Sale $19.99 & Up; Clearance Panties 4 for $18.50; All Full-Price Bras $35; 30% Off New Arrivals |
| January 14, 2025 | Wear-Now Faves! Clothing & Accessories 60% Off (Including New LIVI Just Landed Up to 60% Off); |

| | |
|---|---|
| | Clearance Tops $14.99 & Up; Clearance Bras $25; Clearance Panties 4 for $18.50; Extra 60% Off Clearance; 400+ Styles on Sale! 60% Off Styles starting at $15.98; Wardrobe Refresh! 40% Off; Panties 5 for $35; New Pre-Spring Collection 25% Off; New Arrivals Now 40% Off |
| February 14, 2025 | 40% Off Clothing & Accessories Including New Arrivals; Smart Lift Bras $30, All Other Bras $35 & Under; $20 Tees, $25 Graphics; Clearance Extra 70% Off With Purchase of 2+ Styles, 60% Off 1 Style; 240+ Styles on Sale! 25% Off Early Spring Arrivals; Panties 5 for $35; PJ Sets $35 |
| March 26, 2025 | NEW Spring Arrivals are Here! 30% Off All Other Clothing, Sleep, Swim, & Accessories (Including Dresses and LIVI); All Panties 6 Free When You Buy 4; $35 & Up Pants & Capris, Valued up to $89.95; Tops $21 & Up; All Cotton Bras Now BOGO $5; Pants $35 & Up (Including Linen Pants $35); LIVI $28 & Up; Tees $21 & Up; Extra 50% Off Clearance; Select Tops $25, All Other Tops 30% Off; $35 PJs |

| | |
|---|---|
| April 2, 2025 | NEW Spring Arrivals are Here! 30% Off All Other Clothing, Sleep, Swim, & Accessories (Including Dresses 30% Off; 30% Off New Swim); All LIVI $25 & Up; $49 & Up Dresses; 30% Off Your Sweet Spring Refresh; Major Price Drop! All Cotton Bras Now BOGO $5; Sexy Panties 3 For $36; PJ Sets $35; 5 Panties for $25 With Any Bra Purchase; Extra 50% Off Clearance; 30% Off "Shoes Wisely"; Sexy Bras $35; Select Tops $25, All Other Tops 30% Off |
| May 1, 2025 | 50% Off Sitewide! That Means Bras, Too! (Including Sleep, New Arrivals, Tops, Pants & Jeans, Dresses); $39 & Up Swim; Panties 5 For $35; Extra 50% Off Clearance |
| August 12, 2025 | All LIVI on Sale! All Tops $25, All Bottoms $29 And MORE!; All Other Clothing & Accessories 40% Off; Clearance $12.99 & Up; 25% Off Shop September Early; Cotton Bras BOGO $15; Panties 5 for $35.50 |
| September 15, 2025 | Buy 1 Get 1 Free Everything Including Bras (Also Including New Arrivals, Tops, Dresses, Pants & Jeans) + Panties; |

| | |
|---|---|
| | Clearance NOW $12.99 & Up; Free Ground Shipping on $49+ |

48. At least approximately 74% of the screenshots showed sales that offered X% off sitewide, the regular prices of "full-price" Products, one or more purchased Products, a consumer's full "purchase," "almost everything," or "clothing" Products.[6] And, as shown above, each of the 31 screenshots reviewed also showed substantial additional sales offering discounts on a myriad of Defendant's Products at any given time.

49. To verify that Defendant's advertised promotions routinely apply both online and in stores, Plaintiffs' counsel reviewed the website screenshots and the promotional terms associated with the promotions shown in the above chart, where available. This review revealed that for approximately 85% of those promotions, Defendant's website or promotional terms expressly stated that they were available in stores, as well as online.[7] Moreover, the sales that were advertised as online only were often smaller sales like "Boots $45" and "$12 & Up Tees," and, on each day where a sale was advertised as online only, there were other sales advertised as available online and in stores. For example, on June 8, 2024, the promotional terms of Defendant's advertised "All Dresses $39 & Up" sale stated that the sale was available online only. On that same day, however, Defendant ran a number of other sales, including 40% off all clothing, sleep, swim, and accessories, all bras available for $35,

---

[6] Defendant's advertised sales are sometimes listed as having certain exclusions or limitations. As shown above, however, the sales typically apply to the vast majority (or all) Products in the covered categories. So, for example, while Defendant's sales on "clothing" Products may technically contain exclusions, they still apply to the vast majority (or all) of clothing Products (and often the Products that are not included are still on purported sale pursuant to other advertised promotions).

[7] This does not count promotions offering free shipping, which are not relevant to purchases made in stores.

and an extra 50% off clearance. And each of these sales was available both online and in stores.

50. The combined effect of Defendant's wide-reaching and numerous sales both online and in stores is that Defendant's Products are consistently available at a discount, the vast majority of the time. Said differently, the Products are available for a discount via some sale so frequently that the advertised list prices are not the prices at which the Products are usually sold, as consumers reasonably believe. Instead, because of the constant discounts, their usual, regular, prevailing prices are far lower. Put differently, the list prices that Defendant advertises for its Products are not actually Defendant's regular prices, and the purported discounts Defendant advertises are not the true discount the customer is receiving. Defendant's regular prices are much lower than advertised; and so too are the discounts.

51. Using the tactics described above, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing. In other words, it leads reasonable consumers to believe that they will get a Product worth X at a discounted, lower price Y.

52. Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the prices at which the goods were actually regularly sold before the promotional offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers had to pay for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the sale, and after the sale ends, consumers buying from Defendant regularly had to (or will have to) pay the list price to get the item without an opportunity to get a discount from that list price.

53. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant routinely offers, via substantial advertised sales, discounts off the purported regular prices it advertises for Lane Bryant Products. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent the true market value for the Products, because Defendant's Products are consistently available for less than that, and customers did not regularly have to formerly pay that amount to get those items. Thus, the purported discounts Defendant advertises are not the true discounts the customers are receiving, and are often not a discount at all.

**B. Defendant's advertisements are unfair, deceptive, and unlawful.**

54. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

55. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

56. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

57. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

58. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

59. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**C. Defendant's advertisements harm consumers.**

60. Based on Defendant's advertisements, reasonable consumers expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant regularly sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

61. Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

62. In addition, consumers are more likely to buy a product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

63. Consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase."[8] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount."[9]

64. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product.[10]

65. Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. In addition, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices

---

[8] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[9] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[10] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400% increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiffs and the class paid more for the Products they bought than they otherwise would have.

### D. Plaintiffs were misled by Defendant's misrepresentations.

Plaintiff Erika Schaffner

66. Plaintiff Erika Schaffner has purchased a number of Lane Bryant Products. For example, on September 24, 2025, Ms. Schaffner purchased (1) a Cotton Boost Plunge Bra, in beige; (2) a Cotton Boost Plunge Bra, in black; (3) a Smooth Boost Plunge Bra, in cafe mocha; and (4) a Smooth Boost Plunge Print Bliss Bra, in black, from Defendant's Website, lanebryant.com, while living in Escondido, California. At the time she made her purchase, Defendant's Website advertised a substantial sale that impacted the prices of the Products Ms. Schaffner purchased.

67. Pursuant to the advertised sale, Ms. Schaffner received substantial purported discounts off of the Products' purported regular prices. In particular, the Cotton Boost Plunge Bra in beige was listed with a purported regular price of $46.95, but Ms. Schaffner paid a discounted price of $23.69, the Cotton Boost Plunge Bra in black was also listed with a purported regular price of $46.95, but again Ms. Schaffner paid a discounted price of $23.69, the Smooth Boost Plunge Bra in cafe mocha was listed with a purported regular price of $50.95, but Ms. Schaffner paid a discounted price of $26.19, and the Smooth Boost Plunge Print Bliss Bra in black was listed with a purported regular price of $56.95, but Ms. Schaffner paid a discounted price of $29.27.

68. Relevant information from Ms. Schaffner's email order confirmation for this purchase is shown below:

| | |
|---|---|
| Merchandise: | $201.80 |
| Discount: | -$98.96 |
| Shipping: | $8.95 |
| Est. Taxes & Delivery Fee: | $9.00 |
| **Total:** | **$120.79** |

Cotton Boost Plunge 15w 1141609-y
1 x ~~$46.95~~ $23.69
Size 44C
Beige
UPC: 700001197531

Cotton Boost Plunge 15w 1141609-y
1 x ~~$46.95~~ $23.69
Size 44C
Black
UPC: 700001198187

**Smooth Boost Plunge Bra 1129291-y T**
1 x ~~$50.95~~ $26.19
Size 44C
Cafe Mocha
UPC: 700008600669

**Smooth Boost Plunge Print Bliss Con**
1 x ~~$56.95~~ $29.27
Size 44C
Black
UPC: 700005921644

69. When she made this purchase, Ms. Schaffner saw, read, and relied on the representations on Lane Bryant's Website that she was receiving Products with particular regular prices, values, and/or market prices (equal to the purported regular prices listed above and shown on Defendant's Website and in strikethrough font) and that she was receiving a specific discount and price reduction from those regular prices. She would not have purchased the Products, at the prices she paid, if she knew that Lane Bryant Products were not discounted as advertised, that she was not receiving Products with the advertised values and/or market prices, and that she was not receiving the advertised discounts.

Plaintiff Sheléne Peterson

70. Plaintiff Sheléne Peterson has purchased a number of Lane Bryant Products. For example, on October 31, 2024, Ms. Peterson purchased a LIVI Mid Rise Brushed Rib Classic, from Defendant's Website, lanebryant.com, while living in Belmont, California. At the time she made her purchase, Defendant's Website advertised a substantial sale that impacted the price of the Product Ms. Peterson purchased.

71. Pursuant to the advertised sale, Ms. Peterson received a substantial purported discount off of the Product's purported regular price. In particular, the LIVI Mid Rise Brushed Rib Classic was listed with a purported regular price of $59.95, but Ms. Peterson paid a discounted price of $9.97.

72. Relevant information from Ms. Peterson's email order confirmation for this purchase is shown below:

| | |
|---|---|
| Merchandise: | $59.95 |
| Discount: | -$49.98 |
| Shipping: | $8.95 |
| Est. Taxes & Delivery Fee: | $0.92 |
| **Total:** | **$19.90** |

Livi Mid Rise Brushed Rib Classic F

1 x ~~$59.95~~ $9.97

Size 18/20

Black

UPC: 700003878520

73. When she made this purchase, Ms. Peterson saw, read, and relied on the representations on Lane Bryant's Website that she was receiving a Product with particular regular price, value, and/or market price (equal to the purported regular price listed above and shown on Defendant's Website and in strikethrough font) and that she was receiving a specific discount and price reduction from that regular price. She would not have purchased the Product, at the price she paid, if she knew that Lane Bryant Products were not discounted as advertised, that she was not receiving a Product with the advertised value and/or market price, and that she was not receiving the advertised discount.

* * *

74. Prior to making her purchases, Plaintiffs reviewed Defendant's Website and saw that Defendant was advertising substantial, time-limited discounts on the

Products they purchased. Plaintiffs read and relied on the representations (like those shown above) on Defendant's website, including that the Products had specific regular prices, but were being offered at a specific discount from those regular prices. Based on Defendant's representations described above, Plaintiffs reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Products they were purchasing at the published regular prices, that these regular prices were the prevailing prices and market values of the Products that they were buying, that they were receiving the advertised discounts as compared to the regular prices, that the advertised discounts were only available for a limited time, and that the Products would go back to retailing for the published regular prices when the promotion ended. They would not have made the purchases if they had known that the Products were not discounted as advertised, and that they would not be receiving the advertised discounts.

75. In reality, as explained above, Lane Bryant Products, including the Products that Plaintiffs purchased, are regularly available at a discount from the purported regular prices. In other words, Defendant did not regularly sell the Products that Plaintiffs purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sales were not limited time—Defendant's Products are regularly on sale.

76. Plaintiffs face an imminent threat of future harm. They would purchase additional Lane Bryant Products in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while they could watch Defendant's Website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (*e.g.*, if the sale is actually

limited in time, and not permanent). Accordingly, Plaintiffs are unable to rely on Defendant's advertising in the future, and so they cannot purchase the Products that they would like to purchase.

**E. Defendant breached its contract with and warranties to Plaintiffs and the putative class.**

77. When Plaintiffs, and other members of the putative class, purchased and paid for Lane Bryant Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discount off of the regular price.

78. Defendant's advertisements, including on its Website, in stores, and in email confirmations, list the market values and regular prices of the items that Defendant promised to provide (which, for Plaintiffs, are detailed above). Defendant agreed to provide Products with regular prices and market values equal to the list prices, and to provide discounts equal to the differences between the regular prices, and the prices paid by Plaintiffs and the putative class. For example, for Ms. Peterson's October 2024 purchase, Defendant offered (among other things) to provide the LIVI Mid Rise Brushed Rib Classic she purchased with a regular price and market value of $59.95, for a discounted price of $9.97, and to provide a specific discount ($49.98) off of the regular price.

79. Defendant also warranted that the regular prices and market values of the Products Plaintiffs purchased were the advertised list prices and warranted that Plaintiffs were receiving a specific discount on the Products.

80. The regular prices and market values of the items Plaintiffs and putative class members would receive, and the amount of the discount they would be provided off the regular prices of those items, were specific and material terms of the contracts.

They were also affirmations of fact about the Products and a promise relating to the goods.

81. Plaintiffs and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

82. Defendant breached its contract by failing to provide Plaintiffs and other members of the putative class with Products that have regular prices and market values equal to the regular prices displayed, and by failing to provide the discounts it promised. Defendant also breached warranties for the same reasons.

**F. No adequate remedy at law.**

83. Plaintiffs seek damages and, in the alternative, restitution. Plaintiffs are permitted to seek equitable remedies in the alternative because they have no adequate remedy at law.

84. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiffs' equitable claims are different and do not require the same showings as Plaintiffs' legal claims. For example, Plaintiffs' FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiffs may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of their legal claims.

85. In addition, to obtain a full refund as damages, Plaintiffs must show that the Products they bought have essentially no market value. In contrast, Plaintiffs can seek restitution without making this showing. This is because Plaintiffs purchased Products that they would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

86. Furthermore, the remedies at law available to Plaintiffs are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

87. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiffs faces. Only an injunction can remedy this threat of future harm. Plaintiffs would purchase or consider purchasing Products from Defendant again in the future if they could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiffs have no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiffs are unable to rely on Defendant's advertising in the future, and so cannot purchase the Lane Bryant Products they would like to purchase.

**V. Class Action Allegations.**

88. Plaintiffs bring the asserted claims on behalf of the proposed class:

- All persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more exclusive Lane Bryant Products advertised at a discount from Defendant.

89. The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity***

90. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members. Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

91. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiffs and the proposed class.

***Typicality & Adequacy***

92. Plaintiffs' claims are typical of the proposed class. Like the proposed class, Plaintiffs purchased Lane Bryant Products advertised at a discount. There are no conflicts of interest between Plaintiffs and the class.

***Superiority***

93. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

**First Cause of Action:**

**Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.**

**(By Plaintiffs and the Class)**

94. Plaintiffs incorporate each and every factual allegation set forth above.

95. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

96. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

97. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiffs and class members.

98. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$70~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices (i.e., the prices that Defendant charged before the time-limited discount went into effect.).

99. The prices advertised by Defendant are not Defendant's regular prices. Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there are consistently heavily advertised promotions ongoing entitling consumers to a discount on Defendant's Products. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and

misleading. In addition, Defendant's statements indicating that its discounts are limited in time are false and misleading too.

100. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market prices within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's advertisements do not indicate whether or when the purported former prices were offered at all.

101. Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on the statements when purchasing Lane Bryant Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchasing decision.

102. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy Lane Bryant Products.).

103. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

104. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

105. For the claims under California's False Advertising Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Second Cause of Action:**

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiffs and the Class)**

106. Plaintiffs incorporate each and every factual allegation set forth above.

107. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

108. Plaintiffs and the Class are "consumers," as the term is defined by California Civil Code § 1761(d).

109. Plaintiffs and the Class have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

110. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

111. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

112. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

113. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of

its Products is greater than it actually is by advertising inflated regular prices and fake discounts for its Products.

114. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being offered at a discount, when in fact Defendant does not intend to sell the Products at the advertised discount.

115. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (*e.g.*, "Black Friday Sale" when in fact Defendant has ongoing sales).

116. Defendant's representations were likely to deceive, and did deceive, Plaintiffs and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

117. Defendant's misrepresentations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Lane Bryant Products. Defendant's misrepresentations were a substantial factor in Plaintiffs' purchasing decision.

118. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Lane Bryant Products.

119. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class.

120. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they

had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

121. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiffs, on behalf of themselves and all other members of the Class, seek injunctive relief.

122. CLRA § 1782 NOTICE. On December 11, 2025, CLRA demand letters were sent to Defendant's registered agent and headquarters via certified mail (return receipt requested) on behalf of Ms. Schaffner and Ms. Peterson. Out of an abundance of caution, Plaintiffs sent additional demand letters to Defendant's former headquarters on December 22, 2025. The letters provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Thirty days have now passed and Defendant has not corrected the problem for Ms. Schaffner, Ms. Peterson, and for each member of the Class. Accordingly, Plaintiffs seek all monetary and equitable relief available under the CLRA, including punitive damages and reasonable attorneys' fees.

123. Plaintiffs previously filed CLRA venue declarations. *See* Dkts. 1-1, 1-2.

## Third Cause of Action:

## Violation of California's Unfair Competition Law

## (By Plaintiffs and the Class)

124. Plaintiffs incorporate each and every factual allegation set forth above.

125. Plaintiffs bring this cause of action on behalf of themselves and members of the Class.

126. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

127. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the Federal Trade Commission Act (FTCA). The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1.

***The Deceptive Prong***

128. As alleged in detail above, Defendant's representations that its Products were on sale for specific discounts, that the sales were limited in time, that the Products had specific regular prices, and that the customers were receiving specific discounts were false and misleading.

129. Defendant's representations were misleading to Plaintiffs and other reasonable consumers.

130. Plaintiffs relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

131. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sales were limited in time, that the Products had specific regular prices, and that the customers were receiving specific discounts.

132. Defendant violated established public policy by violating the CLRA, FAL, and FTCA, as alleged above and incorporated here. The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and FTCA).

133. The harm to Plaintiffs and the Class greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

134. Plaintiffs and the Class could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiffs.

135. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

136. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiffs saw, read, and reasonably relied on them when purchasing Lane Bryant Products. Defendant's representations were a substantial factor in Plaintiffs' purchasing decision.

137. In addition, class-wide reliance can be inferred because Defendant's representations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy Lane Bryant Products).

138. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and the Class members.

139. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

140. For the claims under California's Unfair Competition Law, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**<u>Fourth Cause of Action</u>:**

**Breach of Contract**

**(By Plaintiffs and the Class)**

141. Plaintiffs incorporate each and every factual allegation set forth above.

142. Plaintiffs bring this cause of action on behalf of themselves and the Class.

143. Plaintiffs and class members entered into contracts with Defendant when they placed orders to purchase Products.

144. The contracts provided that Plaintiffs and class members would pay Defendant for the Products ordered.

145. The contracts further required that Defendant provide Plaintiffs and class members with Products that have a market value equal to the advertised list prices. They also required that Defendant provide Plaintiffs and the class members with the discounts advertised. These were specific and material terms of the contract.

146. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiffs and class members at the time they placed their orders.

147. Plaintiffs and class members paid Defendant for the Products they ordered, and satisfied all other conditions of their contracts.

148. Defendant breached the contracts with Plaintiffs and class members by failing to provide Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount. Defendant did not provide the discount that Defendant had promised.

149. Plaintiffs provided Defendant with notice of this breach, by mailing notice letters to Defendant's registered agent and headquarters on December 11, 2025. Out of an abundance of caution, Plaintiffs sent additional letters to Defendant's former headquarters on December 22, 2025.

150. As a direct and proximate result of Defendant's breaches, Plaintiffs and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

151. For the breach of contract claims, Plaintiffs seek all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the other class members as a result of Defendant's unlawful conduct.

**Fifth Cause of Action:**

**Breach of Express Warranty**

**(By Plaintiffs and the Class)**

152. Plaintiffs incorporate each and every factual allegation set forth above.

153. Plaintiffs bring this cause of action on behalf of themselves and the Class.

154. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Lane Bryant Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

155. This warranty was part of the basis of the bargain and Plaintiffs and members of the class relied on this warranty.

156. In fact, Lane Bryant Products' stated market values were not the prevailing market values. Thus, the warranty was breached.

157. Plaintiffs provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's registered agent and headquarters on December 11, 2025. Out of an abundance of caution, Plaintiffs sent additional letters to Defendant's former headquarters on December 22, 2025.

158. Plaintiffs and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

159. For their breach of express warranty claims, Plaintiffs seek all damages available, including expectation damages and/or damages measured by the price premium charged to Plaintiffs and the other class members as a result of Defendant's unlawful conduct.

**Sixth Cause of Action:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiffs and the Class)**

160. Plaintiffs incorporate paragraphs 1-76, 83-93.

161. Plaintiffs bring this cause of action in the alternative to their Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of themselves and the Class.

162. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiffs and the class to purchase Lane Bryant Products and to pay a price premium for these Products.

163. In this way, Defendant received a direct and unjust benefit, at Plaintiffs' expense.

164. Defendant knowingly, and with the intent to induce reliance, advertised false regular prices and false discounts off of those prices. Plaintiffs, and other consumers, justifiably relied on Defendant's misrepresentations and were harmed as a result. *See* Count VIII below (Intentional Misrepresentation).

165. (In the alternative only), via those misrepresentations, Defendant fraudulently induced Plaintiffs and other consumers to make purchases, and, as a result, its contracts with Plaintiffs and other class members are void or voidable.

166. Plaintiffs and the class seek restitution, and in the alternative, rescission.

167. For the quasi-contract/unjust enrichment claims, Plaintiffs seek all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiffs and the class as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiffs and the Class)**

168. Plaintiffs incorporate each and every factual allegation set forth above.

169. Plaintiffs bring this cause of action on behalf of themselves and the Class.

170. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and class members concerning the existence and/or nature of the discounts and savings advertised.

171. These representations were false.

172. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

173. Defendant intended that Plaintiffs and class members rely on these representations and Plaintiffs and class members read and reasonably relied on them.

174. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Lane Bryant Products.

175. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and class members.

176. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

177. For the negligent misrepresentation claim, Plaintiffs seek all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(By Plaintiffs and the Class)**

178. Plaintiffs incorporate each and every factual allegation set forth above.

179. Plaintiffs bring this cause of action on behalf of themselves and the Class.

180. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiffs and class members concerning the existence and/or nature of the discounts and savings advertised.

181. These representations were false.

182. When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

183. Defendant intended that Plaintiffs and class members rely on these representations and Plaintiffs and class members read and reasonably relied on them.

184. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Lane Bryant Products.

185. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiffs and class members.

186. Plaintiffs and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

187. For the intentional misrepresentation claim, Plaintiffs seek all damages available, including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiffs and the Class as a result of Defendant's unlawful conduct.

## VII. Relief.

188. Plaintiffs seek the following relief for themselves and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiffs and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;

- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

**Demand For Jury Trial**

189. Plaintiffs demand the right to a jury trial on all claims so triable.

Dated: April 27, 2026

Respectfully submitted,

By: *<u>/s/ Simon Franzini</u>*

Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
Grace Bennett (Cal. Bar No. 345948)
grace@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiffs*